Herbert, J.
The appeal in case No. 35240, also referred to as the Maddox case, arises from assessments made for the tax years 1953, 1954 and 1955. The statutes applicable in such case are, in part, as follows:
Section 5709.01, Revised Code (Section 5328, General Code). “ * * * personal property located and used in business in this state, and all domestic animals kept in this state, whether or not used in business, are subject to taxation, regardless of the residence of the owner thereof * * V’
Section 5701.08, Revised Code (Section 5325-1, General Code). “* * * Personal property is ‘used’ within the meaning of ‘used in business’ when employed or utilized in connection with ordinary or special operations * * * or when stored or kept on hand as material, parts, products, or merchandise; but merchandise or agricultural products belonging to a nonresident of this state is not used in business in this state if held in a storage warehouse for storage only.”
The appeals in the Goodrich case (No. 35239) and the Grener case (No. 35241) are from assessments made for personal property taxes due January 1, 1956. For that tax year, Section 5701.08, Revised Code, was amended, effective September 30, 1955. The last clause after the semicolon, as above quoted, was deleted and the following pertinent language was added:
*405 “* * * Agricultural products in storage in a grain elevator, a warehouse, or a place of storage which products are subject to the control of the United States government and are to be shipped on order of the United States government, and merchandise or agricultural products shipped from outside of this state and held in this state in a warehouse or a place of storage for storage only and for shipment outside of this state are not used in business in this stated’ (Emphasis added.)
Section 5709.01, Revised Code, also was amended, effective September 20, 1955, but the amendment is not pertinent to the issues here.
Because of the variance in the statutes applicable in the instant cases, the Tax Commissioner phrases the question presented in the Maddox case (No. 35240) as “whether or not on tax listing day for the years 1953, 1954 and 1955, the appellees had a taxable interest in the wheat in question,” and, in the Goodrich and Grener cases, whether “the grain in question was subject to the control of the United States government * * * on tax listing day of 1956” and “whether or not the wheat in question was property excepted from personal property taxation by the provisions of Section 5701.08, Revised Code,” as amended.
The appeal in the Maddox case was prior in time to the Goodrich and Grener eases. Testimony taken before an examiner of the Board of Tax Appeals was summarized in its journal entry of April 10, 1957. Pertinent parts of that entry are as follows:
Í (* * *
“The order complained of has to do with appellants’ wheat crops harvested in 1952, 1953 and 1954. During these years appellants entered into consecutive agreement [sic] with the Commodity Credit Corporation. On January 1, tax listing date of each year, these three respective crops were in storage in a grain elevator in Fayette County. The controversy between the contending parties, as the Board of Tax Appeals sees it, depends upon who owned these stored crops on tax lien day of each respective year.
tt* # #
“The respective agreements between the appellants and *406 the Commodity Credit Corporation consist of two documents in each year * * *. These documents consist of what is designated as the ‘producer’s note and loan agreement’ and a negotiable warehouse receipt.
“Appellant producers delivered their wheat to a co-operative elevator, licensed and bonded under the United States Warehouse Act, where it was tested for moisture contents, graded and weighed, and weight slips issued showing the gross net weight of all grain delivered. When the producer returned these slips to the elevator, it issued its warehouse receipt to the producer for the amount of wheat received by it. This receipt states the number of pounds and bushels delivered and received. The receipt is a negotiable instrument, assignable, and evidencing ownership, title and right to possession in the hands of appellants or any subsequent assignee holder thereof. The producers, with the warehouse receipt in hand, then contact the P. M. A. county committee, the agent of Commodity Credit Association, and the producer’s note and loan agreement is prepared and signed by the producer and approved by a P. M. A. committee member. The producers then proceed to the designated bank. Upon delivery of the producer’s note and loan agreement and the warehouse receipt, duly assigned in blank to the bank, the bank pays to the producers the amount designated in the note.
“Thereafter, and before tax lien date for the succeeding year, the bank billed Commodity Credit for the amount advanced by the bank to the producers, and Commodity Credit reimbursed the bank, and took possession of the two instruments under which it was empowered to consign the. wheat in storage to any place it might choose. Commodity Credit paid all storage, insurance and other charges thereon.”
The board incorporated into its entry parts of the “producer’s note and loan agreement,” as follows:
Under Section 4:
“The producer hereby sells, assigns, pledges, mortgages, and/or hypothecates to the payee named in the producer’s note and to any subsequent holder thereof, as collateral security for the payment of the note, the warehouse receipts or other documents representing the commodity described in the schedule of pledged commodity below.”
*407 Under 9 (a), (f), and (h):
(a) “Any holder of the producer’s note shall look solely to the pledged commodity for satisfaction of such note, plus charges and interest, unless the producer has made a fraudulent representation in obtaining the loan evidenced by such note. * *
(f) “The producer understands and agrees that the making of loans pursuant to this producer’s note and loan agreement and the pooling of the pledged commodity and the liquidation of such pool pursuant to subsections (c) and (e) hereof constitute integral parts of a federal program designed to protect the interests of producers and consumers by providing for a continuous and stable supply of agricultural commodities from domestic production adequate to meet consumers’ demand at prices fair to both producers and consumers. In pursuance of such program the Commodity Credit Corporation shall have the right to treat a pooled commodity as a reserve supply to be marketed under such sales policies as the corporation determines will promote orderly marketing, protect the interests of producers and consumers, and not unduly impair the market for the current crop of the commodity, even though part or all of such pooled commodity is disposed of under such policies at prices less than the current domestic price for such commodity. ’ ’
(h) “The Commodity Credit Corporation may prescribe such restrictions or limitations upon the right of the producer to assign, sell, or transfer either his right to redeem or his remaining interest in the pledged commodity as it determines are necessary in order to effectuate the purposes of the loan program pursuant to which this loan is made available.”
Recognizing that the producer has the right to redeem his wheat in kind, since it is fungible goods, before the expiration of a designated time, the Board of Tax Appeals determined that such right is a qualified one, which, under the agreement, the Commodity Credit Corporation may take away in its entirety; that when the Commodity Credit Corporation, as assignee of the bank, took over the producer’s warehouse receipt, it not only took full right and possession of the stored wheat and could do with it as it chose, but the producer lost all rights *408 thereto that he might otherwise have legally and successfully asserted.
The board found, in the Maddox case, that the “producers, on tax lien day of the respective years, were not then owners of their preceding years’ crop,” and reversed the order of the Tax Commissioner making the increased personal property tax assessment.
The Goodrich and Grener cases were submitted to the Board of Tax Appeals on stipulations and exhibits consisting of the producer’s note and loan agreement in each case, and the general provisions of the 1955 crop price support program.
As noted above, Section 5701.08, Revised Code, as amended in 1955, is applicable to these cases. On December 27, 1955, the Tax Commissioner of Ohio issued to All county auditors his Bulletin No. 100, entitled “Re: Taxation of Agricultural Products under Loan from the Commodity Credit Corporation— Section 5701.08 of the Revised Code of Ohio,” the pertinent parts of which bulletin are as follows:
“Agricultural products stored on the land where produced or in a warehouse on which a Commodity Credit Corporation loan has been issued, and agricultural products under a ‘purchase agreement plan’ with the Commodity Credit Corporation, are taxable to the owner thereof in the taxing district in Ohio where stored. * * *
“These three types of plans are commonly referred to as ‘farm stored loans,’ ‘warehouse stored loans,’ and ‘purchase agreement plans.’ In each instance the government exerts no control over the agricultural products in that the farmer or the warehouseman has custody of such products. At no time until the United States government takes custody of the agricultural products after the farmer has decided to release his products by not redeeming his note, is any control in the United States government, and further, the government has no authority to ship these products until the time when the farmer decided not to redeem the note, which event occurs after tax listing date.
“Section 5701.08 of the Ohio Revised Code requires that agricultural products must be subject to the control of the United States government and subject to shipment on order of the United States government before qualifying for exemption. ’ ’
*409 The assessments in the Goodrich and Grener cases were made pursuant to that bulletin.
In the Goodrich case, the grain was stored on the farm, as authorized by the general provisions of the 1955 crop price support program and pursuant to the terms of the mortgage; on January 1, 1956, the wheat was in such storage, subject to the terms of the note, supplemental agreement and mortgage; the note and a chattel mortgage were held by the Commodity Credit Corporation; and the note which was payable on or before March 31, 1956, was uncalled and unpaid.
The Board of Tax Appeals in a journal entry dated May 16, 1957, correcting its prior action of April 10, 1957, reversed the order of the Tax Commissioner, the pertinent portion of which entry is as follows:
“Appellant’s 1955 wheat crop was mortgaged to the Commodity Credit Corporation on August 23 of that year and stored upon her farm as a ‘farm stored loan.’ Revised Code Section 5701.08, as it existed prior to September 30, 1955, made its taxability dependent upon where title reposed on tax listing day, January 1, 1956. The present section as now amended, effective date, September 30, 1955, now makes its taxability dependent upon governmental control of the stored wheat and the right of the government to order it shipped elsewhere. Since the government had control thereof and the right to cause it to be shipped elsewhere on tax listing date, January 1, 1956, this wheat was ‘not used in business in this state’ and was not taxable. It, therefore, follows that the order of the Tax Commissioner must be and is hereby reversed.”
In the Grener case, the wheat was stored in a grain elevator; the warehouse receipt had been assigned to the bank as security for a “producer’s loan agreement”; and the note and security were held by the bank, pursuant to a “loan agency agreement” made by the bank with the Commodity Credit Corporation. The note was payable on March 31, 1956, or upon such earlier date as the Commodity Credit Corporation might demand payment. On January 1, 1956, no payment had been made on the loan, and the note and warehouse receipt were held by the bank subject to the loan agency agreement with the Commodity Credit Corporation.
*410 The Board of Tax Appeals found in its entry dated April 10,1957, that the operative facts in the G-rener case are precisely the same as those in the Maddox case, and, without otherwise referring to Section 5701.08, Revised Code, as amended, held “that the appellant, producer, was not the owner of this stored wheat crop on tax listing day, January 1, 1956; that on said day title thereto rested in the Commodity Credit Corporation,” and reversed the order of the Tax Commissioner.
The question before this court is simple. Are the decisions of the Board of Tax Appeals in these cases unreasonable or unlawful?
In the light of the foregoing discussion, the holdings of the Board of Tax Appeals in these cases may be summarized as follows:
Agricultural products placed in approved storage in grain elevators or on the farm by the producer as security for the producer’s note and loan agreement owned and held by the Commodity Credit Corporation, an instrumentality of the United States government, under the terms of which note and loan agreement the producer “sells, assigns, pledges, mortgages and/or hypothecates” the products as collateral security, to which security solely the holder of the note and loan agreement looks for the satisfaction of such note, and under which instruments the producer has a limited right of redemption thereof, are not property of the producer taxable under Section 5701.08, Revised Code, effective October 1,1953, and as amended effective September 30, 1955.
The court is in accord with this position, and the decision of the Board of Tax Appeals in each case is affirmed.

Decisions affirmed.

Weyganbt, C. J., Zimmerman, Stewart, Taet, Matthias and Bell, JJ., concur.